UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRADEXIM INTERNATIONAL COMPANY a/k/a
TRADEXIM INTERNATIONAL CO. CALIFORNIA,

        Plaintiff,

– against –

REPUBLIC OF CROATIA,

        Defendant.

Case No.

---

## COMPLAINT

Plaintiff Tradexim International Company a/k/a Tradexim International Co. California ("Tradexim" or "Plaintiff"), by its undersigned attorneys, Chaffetz Lindsey LLP, for its Complaint against the Republic of Croatia ("Croatia") alleges as follows:

## INTRODUCTION

1. Nearly 20 years ago, Tradexim obtained a judgment in Croatia (the "Croatian Judgment") against a state-owned Croatian company, Gavrilović Holding Petrinja ("Gavrilović Holding" or "Gavrilović"). But ever since, Croatia has prevented Tradexim from collecting even a cent of what it is rightfully owed. Instead, Croatia has wrongfully claimed Gavrilović Holding's valuable real properties as its own, leaving its wholly-owned company as a bankrupt empty shell, devoid of assets.

2. Unable to obtain any relief in Croatia, Tradexim in 2019 commenced proceedings in New York state court to recognize and enforce the Croatian Judgment. This past March, the

New York court entered a default judgment against Gavrilović Holding for nearly $1.9 million (the "New York Judgment").[1]  Tradexim now seeks to enforce its New York Judgment against Croatia – Gavrilović's alter ego.  Upon information and belief, Croatia has assets in this District.

## THE PARTIES

3. Tradexim is a District of Columbia corporation with its principal place of business located at 2102 Business Center Dr., Irvine, CA 92612.  Tradexim imports and exports food products, including to and from southeastern Europe.

4. Croatia is a member state of the European Union located in southeastern Europe on the Adriatic Sea.  Croatia is a foreign state within the meaning of 28 U.S.C. § 1603(a).

5. For all purposes in this action, Croatia should be deemed an alter ego of Gavrilović Holding because Croatia has fraudulently and unjustly abused Gavrilović Holding's nominally separate corporate status by siphoning assets from Gavrilović to enrich itself and thwart the collection efforts of Gavrilović's creditors.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983) ("*Bancec*") (foreign sovereign will be deemed alter ego of juridically separate entity where separate treatment would work a "fraud or injustice" (internal quotation marks omitted)).

6. Gavrilović Holding is wholly-owned by the Croatian Ministry of State Property (the government entity that now owns the portfolio of assets previously held by the Croatian Privatization Fund).  Irrespective of whether it is an "agency or instrumentality" of Croatia under 28 U.S.C. § 1603(b), Gavrilović Holding's underlying commercial activity that gave rise to the Croatian Judgment (and thus, to the New York Judgment) is imputable to Croatia as Gavrilović

---

[1] A certified copy of the New York Judgment, without the attachments thereto, is attached as Exhibit A.

Holding's alter ego for the reasons set forth below. *See Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 128 (2d Cir. 2016) (rejecting argument that "*Bancec*'s alter ego principles cannot provide jurisdiction over an entity that does not otherwise satisfy the FSIA's agency or instrumentality definition"), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

**JURISDICTION AND VENUE**

7.  The Court has subject matter jurisdiction in this action under the Foreign Sovereign Immunities Act (the "FSIA"). Specifically, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that the United States District Courts shall have original jurisdiction "of any nonjury civil action against a foreign state," as defined in 28 U.S.C. § 1603, unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international agreement.

8.  Croatia is a "foreign state" within the meaning of 28 U.S.C. § 1603(a). The FSIA's "commercial activity" exception denies immunity to a foreign state where an action is "based upon" any of the following: (i) "a commercial activity carried on in the United States by the foreign state"[2]; (ii) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (iii) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

9.  Under the "commercial activity" exception, Croatia is not immune from suit because the Croatian Judgment (and the New York Judgment recognizing and enforcing it) was

---

[2] The FSIA defines the phrase "commercial activity carried on in the United States by a foreign state" as "commercial activity carried on by such state and having *substantial contact with* the United States." 28 U.S.C. § 1603(e) (emphasis added).

"based upon" Gavrilović Holding's delivery of dangerously defective goods to New York (as more fully set forth below). *See Servaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 23–24 (2d Cir. 2011) ("In applying the commercial activity exception to an action for recognition of a foreign judgment, we look to the underlying conduct that gave rise to the judgment."); *Int'l Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8, 11-12 (2d Cir. 1989) (analyzing jurisdiction under the commercial activity exception where foreign judgment creditor sought enforcement of a Bahamian default judgment against a state-owned Iraqi bank).

10. Gavrilović Holding's commercial activity is imputable to Croatia because the latter is Gavrilović Holding's alter ego. *See First City, Texas-Houston, N.A. v. Rafidain Bank,* 150 F.3d 172, 174 (2d Cir. 1998) (where an alter ego relationship exists between two entities, both are "subject . . . to jurisdiction under the FSIA's commercial activity exception to immunity to the same extent").

11. This Court has personal jurisdiction over Croatia pursuant to 28 U.S.C. § 1330(b), which provides that a United States District Court shall have personal jurisdiction over a foreign state that is not immune from suit, provided that service is effected in accordance with 28 U.S.C. § 1608. Plaintiff will serve Croatia according to § 1608(a), which governs service on a foreign state.

12. Because Croatia is a foreign state, it is not entitled to due process under the Fifth Amendment and therefore cannot assert a "minimum contacts" defense to jurisdiction. *See, e.g.*, *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009) ("[F]oreign states are not 'persons' entitled to rights under the Due Process Clause."); *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 809 (D.C. Cir. 2012) ("[F]oreign sovereigns . . . are not 'persons' under the Fifth Amendment's Due Process Clause—and thus have no right to

assert a personal jurisdiction defense.").

13. Venue is proper in this Court under 28 U.S.C. § 1391(f)(1) because Plaintiff seeks to enforce a judgment issued in New York and because the commercial activity that gave rise to the Croatian Judgment and, subsequently, the New York Judgment, occurred in New York.

## FACTUAL BACKGROUND

### A. Croatia Deprives Gavrilović Holding of its Assets Through "Sham" Bankruptcy Proceedings

14. In post-World War II Yugoslavia, the Gavrilović enterprise was publicly owned in accordance with Yugoslav principles of social ownership. In April 1991—just two months before Croatia declared its independence from Yugoslavia—the Gavrilović enterprise was reorganized into nine companies under the umbrella of Gavrilović Holding, which were slated for conversion from social ownership to private ownership.

15. The allocation of assets to Gavrilović Holding and its subsidiaries was never finalized, however, because the city of Petrinja, where Gavrilović was headquartered, was under military occupation. As a result, thousands of plots of land and other real estate, with an aggregate value approaching one *billion* dollars, were never registered as assets of Gavrilović Holding or its wholly-owned subsidiaries.

16. In July 1991, Croatia, through its "Agency for Restructuring and Development," replaced the board of Gavrilović Holding with its own handpicked directors. The next month, the newly-installed board placed five of the nine Gavrilović Holding companies into bankruptcy. In November 1991, Georg Gavrilović (an Austrian citizen and member of the Gavrilović family whose name the company still bears) purchased the five Gavrilović Holding companies and the bankruptcy was subsequently closed.

17. As Croatia itself recently acknowledged in an arbitration initiated by Mr.

Gavrilović against it before the International Centre for Settlement of Investment Disputes in Washington, D.C., the 1991 bankruptcy was a "sham" proceeding effectuated by Croatian government officials to finance Croatia's purchase of weapons to support its War of Independence.

18. In Croatia's own words, "Mr Gavrilović, a man of modest financial means but bestowed with very powerful friends, acquired a huge industrial conglomerate priced at a fraction of its value almost overnight in shambolic proceedings during a time of great political turmoil when the rule of law was weak." *Georg Gavrilović and Gavrilović d.o.o. v. Republic of Croatia*, ICSID Case No. ARB/12/39, Award, July 25, 2018, ¶ 289. A majority of the token amount (less than $2 million) that Mr. Gavrilović paid for Gavrilović Holding's companies came from "the budget of Croatia and the remaining funds were 'fleeced'" from the five Gavrilović Holding companies the state-appointed board placed into bankruptcy. *Id.* ¶ 197. That money was not put towards the bankruptcy estates of the companies, as required under Croatian law. Instead, as the ICSID Tribunal found, Croatia used its bankruptcy courts to "smuggl[e] [the] money out of the country" by directing Mr. Gavrilović's payment to "foreign bank accounts that Croatia controlled," which Croatia then used to purchase weapons in circumvention of European Union and United Nations arms embargos during the Balkan War. *Id.* ¶¶ 325, 330. Croatia transferred the five Gavrilović Holding companies to Mr. Gavrilović through the bankruptcy proceeding as "a *quid pro quo*" for his participation in Croatia's "orchestrated [] scheme." *Id.* ¶ 325.

19. Gavrilović Holding (and its four remaining subsidiaries) were not purchased by Georg Gavrilović and thus remained—and still remain today—under the ownership of Croatia. In 1995, the Croatian Privatization Fund (the "Fund"), a state-owned institution (now the Croatian Ministry of State Property), acquired all of the shares in Gavrilović Holding. The Fund's primary mission was to transfer state property through conversion and privatization. But Croatia

improperly used the Fund to achieve precisely the opposite result, namely to deprive Gavrilović Holding of substantial assets that should have been—but never were—registered as its property. As a result of Croatia's scheme, these assets to this day remain the property of Croatia, and Gavrilović Holding was reduced to an empty, bankrupt shell.

20. Specifically, Gavrilović Holding possessed usage rights over large swaths of valuable agricultural land. As a consequence of the "social ownership" regime inherited from the former Yugoslavia, Croatia remained the legal owner of the land. Critically, Croatian law required the Fund to account for and register all real property over which Gavrilović Holding had usage rights to enable the transfer of legal ownership to Gavrilović. However, in violation of its obligations under Croatian law, the Fund refused to register Gavrilović Holding's properties, thereby ensuring Croatia's continued ownership. The Croatian government further instituted special laws that confiscated or nationalized other real property properly belonging to Gavrilović.

21. Deprived of its assets, Gavrilović Holding was forced to declare bankruptcy in 2002. On April 23, 2002, the Commercial Court of Zagreb opened and closed Gavrilović's bankruptcy proceeding in a single day. The court refused to recognize Gavrilović's ownership of non-registered land and rejected the company's argument that the properties should be included in the bankruptcy estate. As a result, Gavrilović Holding's bankruptcy estate remained completely devoid of assets to satisfy its creditors, including Tradexim.

**B.     Tradexim Obtains the Croatian Judgment Based on Gavrilović's Delivery of Dangerously Defective Goods in New York**

22. The Croatian Judgment, which the New York Judgment recognized and enforced, arose from Gavrilović's breach of a March 1990 contract with Tradexim for delivery to the latter

7

in the United States of 635 tons of canned ham.[3] Tradexim remitted payment for the goods from its New York bank account, in the total amount of approximately $1.2 million.

23. Pursuant to its contract with Tradexim, Gavrilović in May 1990 exported its first shipment of canned ham to the United States. Upon arrival in New York, officials from the U.S. Food and Drug Administration, the U.S. Department of Agriculture, and U.S. Customs inspected the shipment and determined that it contained deadly bacteria. As a result, the goods were returned to Croatia for destruction, at Tradexim's expense, and the U.S. authorities revoked Gavrilović's export permit, making further exports to the United States impossible.

24. Gavrilović attempted a second shipment to the United States but was refused authorization to unload it in the port of New York. That shipment, too, was returned to Croatia.

25. Tradexim never received any of the goods it purchased from Gavrilović, nor did Gavrilović reimburse Tradexim for any portion of the $ 1.2 million advance payment it made under the contract. Tradexim also suffered further, substantial damages totaling millions of dollars as a result of Gavrilović's breaches, including lost profits and liability for presold orders to its own customers.

26. Due to the war that erupted in the former Yugoslavia in 1991, Tradexim was unable to pursue a damages claim against Gavrilović Holding until July 1996, when it sued Gavrilović Holding in the Commercial Court of Zagreb. Gavrilović was represented by counsel in the Croatian proceedings and defended against Tradexim's claims.

27. On March 20, 2000, the Commercial Court of Zagreb issued a judgment ordering

---

[3] Specifically, the March 1990 contract was between Gavrilović Holding's predecessor, Gavrilović prehrambena industrija Petrinja ("Food Industry Gavrilović") on the one hand and the sole proprietorship of Tradexim's principal (Mirko Despotovich, doing business as Tradexim International Co.) on the other hand.

Gavrilović to pay damages to Tradexim in the amount of $385,868.25, plus interest and court expenses in the amount of HRK 260,567.60 (approximately USD$39,327.39).

28.     Gavrilović appealed the Commercial Court's judgment to the High Commercial Court of Croatia.  On March 3, 2001, the High Commercial Court dismissed Gavrilović's appeal and affirmed the Commercial Court's judgment as a final judgment in favor of Tradexim.

### C.     Tradexim Obtains the New York Judgment Against Gavrilović

29.     For nearly 20 years, Croatia has refused to pay Tradexim's judgment against Gavrilović Holding.  And Croatia's siphoning off of Gavrilović Holding's assets have thwarted Tradexim's efforts in Croatia to obtain satisfaction of the Croatian Judgment, which remains due and owing in full.

30.     Tradexim has vigorously pursued all available avenues to obtain satisfaction of the Croatian Judgment in Croatia.  To date, however, those efforts have been unsuccessful.  In November 2018, the Commercial Court of Zagreb granted Tradexim's application for the appointment of a bankruptcy administrator for the estate of Gavrilović Holding.  In January 2019, the High Commercial Court of Croatia dismissed Croatia's appeal from the Commercial Court's decision.  As of the filing of this Complaint, the bankruptcy proceedings in Croatia remain ongoing.  It may take years for the bankruptcy proceedings to be concluded.

31.     Faced with Croatia's continued intransigence, Tradexim in July 2019 commenced proceedings in New York Supreme Court (New York County) to recognize and enforce the Croatian Judgment under Article 53 of New York Civil Practices Law and Rules.  By Order dated January 21, 2020, that court (Tanya R. Kennedy, J.S.C.) granted Tradexim's motion for summary judgment in lieu of complaint and directed the Clerk of Court to enter judgment accordingly. Thereafter, on March 5, 2020, the Clerk of Court entered the New York Judgment against Gavrilović Holding and in favor of Tradexim in the amount of $1,867,423.26.

## COUNT I
**(Enforcement of the New York Judgment Against the Republic of Croatia)**

32. Paragraphs 1-31 are incorporated by reference.

33. The New York Judgment is entitled to full faith and credit in this Court under 28 U.S.C. § 1738.

34. Because the Republic of Croatia is Gavrilović Holding's alter ego, the New York Judgment against Gavrilović Holding should be recognized and enforced against Croatia.

## CONCLUSION

WHEREFORE, Tradexim respectfully requests that this Court enter judgment as follows:

(i) Recognizing and enforcing the New York Judgment against the Republic of Croatia;

(ii) Awarding Tradexim post-judgment interest at the applicable legal rate; and

(iii) Granting such other and further relief as may be just and proper.

Dated:   New York, New York
         January 4, 2021

                                        Respectfully submitted:

                                        **CHAFFETZ LINDSEY LLP**

                                        By:   */s/ Andreas A. Frischknecht*

                                        Andreas A. Frischknecht
                                        1700 Broadway, 33rd Floor
                                        New York, NY 10019
                                        Tel. (212) 257-6960
                                        Fax. (212) 257-6950
                                        a.frischknecht@chaffetzlindsey.com

                                        *Counsel for Plaintiff*